HUBNER, GUARDIAN, ET AL., APPELLANTS, *v.* SIGALL ET AL., APPELLEES.

(No. 86AP-1054—Decided March 31, 1988.)

*James C. Thompson; Thomas M.*

*Tyack Co., L.P.A.,* and *Mark A. Serrott,* for appellants.

*Lane, Alton & Horst* and *Gregory D. Rankin,* for appellees Leonard S. Sigall and Bonnie Gee.

*Ronald J. O'Brien,* city attorney, and *Lisa L. Sadler,* for appellees city of Columbus and Geoffrey Miller.

STRAUSBAUGH, J. This is an appeal by plaintiffs from a judgment of the common pleas court granting defendants' motion for a directed verdict in their favor on the issue of negligence. The court sustained the motion at the close of plaintiffs' case.

Plaintiff, Nicholas Hubner ("Nicky"), was injured while riding as a passenger in decedent Laura Gee's car. The accident occurred as Gee attempted to pass defendant Geoffrey Miller's automobile on the right. Apparently, Gee's Datsun bumped Geoffrey Miller's Ford, an unmarked police vehicle. Gee then lost control of her car and swerved into the path of an oncoming automobile. The ensuing impact killed Gee and another passenger, and severely injured Nicky.

Subsequently, Nicky's parents, plaintiffs Deborah and Ronald Hubner, filed suit in negligence against Gee's mother (defendant Bonnie Gee) and defendant Leonard S. Sigall, executor of Gee's estate. These defendants settled and plaintiffs executed a covenant not to sue. The negligence action was then dismissed.

Plaintiffs then brought an action in negligence against Miller, an off-duty Columbus police officer, and the city of Columbus. Defendants Bonnie Gee and Sigall were then joined, over plaintiffs' objections, as indispensable parties under the contribution and comparative negligence statutes.

Following defendants' Civ. R. 50

motion, the court directed the verdict in favor of defendants on the issue of negligence. The court found that Miller was not negligent as a matter of law.

On appeal, plaintiffs assert three assignments of error for our review:

"1. The trial court erred in sustaining the defendants' motion for a directed verdict pursuant to Ohio Civil Rule 50(A) at the close of plaintiffs' case.

"A. Construing the evidence and all inferences most favorable to the plaintiffs, reasonable minds could find that Officer Miller's act of speeding up and not allowing the vehicle in which plaintiff was a passenger to pass him constituted negligence.

"B. When two lanes on a highway merge into a single lane both drivers approaching the merger have a duty to exercise ordinary care. The issue of ordinary care is a factual issue for jury determination.

"C. The issue of whether one vehicle can safely pass another vehicle is for the jury to determine from all the attending facts and circumstances.

"II. The trial court erred in applying O.R.C. § 2744.05 retroactively. Application of O.R.C. § 2744.05 to rights which accrued prior to November 20, 1985 violated Article II § 28 of the Ohio Constitution, which prohibits the General Assembly from enacting retroactive laws.

"III. The trial court erred in admitting irrelevant, prejudicial testimony over plaintiffs' objections."

Plaintiffs, by way of their first as-

signment of error, contend that the court erred in granting defendants' Civ. R. 50(A) motion for a directed verdict. Essentially, plaintiffs argue that some evidence was adduced at trial which would support a finding that Officer Miller failed to exercise ordinary care under the circumstances. Defendants counter this argument by contending that Gee, by operating her automobile in contravention of R.C. 4511.28(B), was negligent *per se* and that Officer Miller was unaware of her negligence. As such, defendants maintain that the evidence supports only the conclusion that Miller was not negligent as a matter of law.

At the outset, it is important to note that the sole issue presented by plaintiffs' first assignment of error is the liability of Miller to plaintiffs. This case does not involve contributory negligence on the part of plaintiffs. As such, plaintiffs' citation to *Westervelt* v. *Rooker* (1983), 4 Ohio St. 3d 146, 4 OBR 390, 447 N.E. 2d 1307, is misplaced, since the issue here is not the negligence of Gee in passing Miller on the right[1] rather, the issue is whether Miller breached any duty to plaintiffs. The trial court found that Miller had only a duty to keep a lookout and that no evidence was presented to indicate that this duty was breached. Accordingly, the trial court directed the verdict in favor of defendants.

Generally, a directed verdict is appropriate only where the party opposing the motion fails to adduce any evidence on the essential elements of his

---

[1] Given this view of the issue, we also note that defendants Sigall and Gee, who had been dismissed pursuant to a settlement with plaintiffs, were later rejoined as indispensable parties pursuant to R.C. 2315.19(A)(2), the Ohio comparative negligence statute. Clearly, once plaintiffs executed the settlement, these defendants were immune from further suit by plaintiffs or from contribution sought by any other joint tortfeasor. R.C. 2307.32(F). As such, there appears to be a conflict between the two statutes and the policies which underlie either. However, since the parties have neither appealed nor briefed this issue, we express no opinion as to the propriety of the rejoining of defendants Sigall and Gee.

claim or defense. *O'Day* v. *Webb* (1972), 29 Ohio St. 2d 215, 58 O.O. 2d 424, 280 N.E. 2d 896. The Civ. R. 50(A) test looks to the sufficiency of the evidence on each element of a claim. *Ruta* v. *Breckenridge-Remy Co.* (1982), 69 Ohio St. 2d 66, 23 O.O. 3d 115, 430 N.E. 2d 935. As such, a motion for a directed verdict presents a question of law as opposed to a question of fact. *Id.* Thus, arguments which look to the weight of the evidence are inappropriate for purposes of ruling on such motions. *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 21 O.O. 3d 177, 423 N.E. 2d 467.

The essential elements, of course, for a claim predicated upon negligence are duty, breach of that duty, and damage or injury as a proximate result of the breach. *Strother* v. *Hutchinson, supra,* at 285, 21 O.O. 3d at 179, 423 N.E. 2d at 469; *Baier* v. *Cleveland Ry. Co.* (1937), 132 Ohio St. 388, 391, 8 O.O. 208, 209, 8 N.E. 2d 1, 2. Therefore, for plaintiffs to prevail in this court, they must first establish that Officer Miller owed certain duties to them which he breached.

Although we agree with the trial court that Miller had a duty to keep a lookout, we do not agree that such duty was his sole obligation. Clearly, all motorists have a duty to observe the environment in which they drive, not only in front of their vehicle, but to the sides and rear as the circumstances may warrant. *State* v. *Ward* (1957), 105 Ohio App. 1, 5 O.O. 2d 130, 150 N.E. 2d 465; *Scott* v. *Marshall* (1951), 90 Ohio App. 347, 365, 48 O.O. 12, 19, 105 N.E. 2d 281, 291, appeal dismissed (1951), 156 Ohio St. 270, 46 O.O. 129, 101 N.E. 2d 906. Additionally, we believe the common law imposes a duty upon motorists to exercise their rights in a reasonable manner upon becoming aware of a perilous situation. *Morris* v. *Bloomgren* (1933), 127 Ohio St. 147, 187 N.E. 2.

Here, defendants contend that R.C. 4511.01(UU) confers upon Miller an unqualified right to proceed uninterruptedly in his lane of travel. That section states:

" 'Right of way' means the right of a vehicle * * * to proceed uninterruptedly in a lawful manner in the direction in which it * * * is moving in preference to another vehicle * * * approaching from a different direction into its * * * path."

While it is not entirely clear that this statutory definition applies, since both vehicles were traveling in the same direction, see *Counter* v. *Tiedman* (1928), 29 Ohio App. 489, 494, 163 N.E. 915, 917, it is clear that the statute confers only the right "* * * to proceed uninterruptedly *in a lawful manner * * *.*" (Emphasis added.) *Morris, supra,* at paragraph one of the syllabus. Accordingly, we find that motorists traveling in the same direction have a common duty to exercise their respective rights with due regard for the safety of each other. Under the circumstances of this case, we believe it was incumbent upon both Officer Miller and Laura Gee to adjust their respective speeds, upon becoming aware that the right-lane traffic was required to merge left, in order to avoid an accident.

We find that such a common duty must exist where both drivers are aware that two lanes merge into a single lane of travel and both are exercising their respective rights. Clearly, Miller had the right to proceed lawfully and uninterruptedly in his lane of travel. It is also clear that Laura Gee had the right to pass Officer Miller on the right provided she could do so in safety. See R.C. 4511.28. Once Gee became aware that she could not safely exercise her right, it was her duty to adjust her speed. On the other hand, while Miller had the right to proceed uninterruptedly in his lane of travel, he

was also under a duty to allow Gee to pass him on his right. See R.C. 4511.34 and 4511.27. Moreover, to the extent Miller was aware that Gee was not going to yield the right of way, he was under a duty to adjust his speed to avoid an accident.

Here, the evidence indicates that Winchester Pike, at the Hamilton Road intersection, consists of two eastbound and two westbound lanes; that approximately eight hundred feet east of the intersection, Winchester Pike narrows from four lanes to two lanes; that Officer Miller was stopping in the left-hand eastbound lane of Winchester Pike for a red light at the intersection of Hamilton Road; that Laura Gee approached this light in the right-hand lane of Winchester Pike; that, as the light changed, Miller proceeded east in the left-hand lane and that Laura Gee pulled in behind him; that Gee then reentered the right-hand lane to pass Miller on the right; and, that, at the point where the right lane of Winchester Pike merged into the left lane, Gee's vehicle swerved in front of Miller and collided with a westbound vehicle. There was also testimony that *Gee's vehicle was beside Miller's vehicle for a distance; that her vehicle pulled ahead of Miller's vehicle;* and that Miller's vehicle rear-ended Gee's vehicle, causing her vehicle to swerve into the westbound lane.

Construing this evidence most favorably to plaintiffs, we cannot conclude as a matter of law that Miller breached no duty. We find that whether Miller was, or should have been, aware of the passing vehicle, whether Miller attempted to prevent Gee from passing (see R.C. 4511.25) and whether Miller failed to exercise ordinary care once he became aware of impending peril are questions for the jury. As such, plaintiffs' first assignment of error is sustained.

As their second assigned error,

plaintiffs challenge the retroactive application of R.C. 2744.05 to bar testimony before the jury as to future damages. Specifically, plaintiffs contend that R.C. 2744.05(C)(2)(c) violates Section 28, Article II of the Ohio Constitution in that it retrospectively impairs plaintiffs' vested rights to have a jury determine the amount of damages to which plaintiffs may be entitled.

Section 28, Article II of the Ohio Constitution provides:

"The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties, and officers, by curing omissions, defects, and errors, in instruments and proceedings, arising out of their want of conformity with the laws of this state."

The provisions of R.C. 2744.05 which are pertinent to this appeal state:

"Notwithstanding any other provisions of the Revised Code or rules of a court to the contrary, in an action against a political subdivision to recover damages for injury, death, or loss to persons or property caused by an act or omission in connection with a governmental or proprietary function:

"* * *

"(C)(1) There shall not be any limitation on compensatory damages that represent the actual loss of the person who is awarded the damages. * * *

"* * *

"(2) As used in this division, 'the actual loss of the person who is awarded the damages' includes all of the following:

"* * *

"(c) All expenditures to be incurred in the future, as determined by the court, by the person injured or an-

other person on his behalf for medical care or treatment, for rehabilitation services, or for other care, treatment, services, products, or accommodations that will be necessary because of the injury * * *."

The General Assembly expressly provided that R.C. 2744.05 was to apply to all causes of action which had accrued prior to November 20, 1985, but had not yet been brought to trial as of that date. It is plaintiffs' position that, in light of this retroactive application, their right to have a jury determine all issues regarding damages has been retroactively impaired by the provisions of R.C. 2744.05(C)(2)(c).

Although the right to trial by jury is a substantive right and cannot be impaired by retroactive application of a new statute to bar a right to trial by jury with respect to preexisting claims as to which the right has attached, *Kneisley* v. *Lattimer-Stevens Co.* (Aug. 4, 1987), Franklin App. No. 86AP-1046, unreported, affirmed (1988), 40 Ohio St. 3d 354, 533 N.E. 2d 743, R.C. 2744.05(C)(2)(c) is not necessarily violative of Section 28, Article II, Ohio Constitution, since that statute does not clearly deny or impair the right to trial by jury.

R.C. Chapter 2744 was enacted in 1985 to provide a uniform standard and method for determining tort liability of political subdivisions of the state. This statutory scheme for political subdivision tort liability, unlike that for state tort liability under R.C. Chapter 2743, specifically provides and preserves the right to trial by jury. Any doubt of the right to trial by jury is removed by the provision of R.C. 2744.04(B) which provides in pertinent part:

"In the complaint * * * the complainant shall include a demand for a judgment for the damages that the judge in a nonjury trial or the jury in a jury trial finds that the complainant is entitled to be awarded, but shall not specify in that demand any monetary amount for damages sought."

Clearly and unequivocally, R.C. 2744.04(B) provides that the jury should determine damages in a jury trial, and contemplates the right to a jury trial shall be preserved and available to complainants. R.C. 2744.05 does place some limitations upon the damages that may be recovered, such as the limitation in R.C. 2744.05(A) which precludes punitive damages. There are also provisions for the deduction of collateral source benefits. R.C. 2744.05(C)(1) provides that there shall be no limitation on compensatory damages that represent the actual loss of the person who is awarded the damages. R.C. 2744.05(C)(2) defines the term "the actual loss of the person who is awarded the damages." The provision in controversy, division (C)(2)(c) of R.C. 2744.05, provides that "the actual loss of the person who is awarded the damages" includes "[a]ll expenditures to be incurred in the future, *as determined by the court* * * *." (Emphasis added.)

The contention of plaintiffs is that this provision of R.C. 2744.04(B), which concerns damages constituting "expenditures to be incurred in the future," will not be determined by the jury in a jury trial, but instead will be determined by the judge. The rationale behind this conclusion is the use of the words "as determined by the court" with the assumption that the word "court" necessarily means the judge. This, of course, is not correct.

Although we frequently refer loosely to the judge as the "court," this is not necessarily exclusive or even correct. This point is well set forth in *State, ex rel. Hawke,* v. *Le Blond* (1923), 108 Ohio St. 126, 140 N.E. 510, which extensively discusses the distinction. The opinion states simply that "[t]he court is a tribunal organized for

the purpose of administering justice, while the judge is the officer who presides over that tribunal." *Id.* at 132, 140 N.E. at 514. The opinion goes on to state that:

"The terms 'court' and 'judge' are sometimes used interchangeably and synonymously, but they are never technically the same in meaning.

"A court is an incorporeal, political being, composed of one or more judges, who sit at fixed times and places, attended by proper officers, pursuant to lawful authority, for the administration of justice. * * *" *Id.* at 132-133, 140 N.E. at 514.

Without belaboring the point, the word "court" used in a statute may or may not refer to the judge. In some instances it does and others it does not. Quite clearly, a jury is an arm or part of the court, the same as the judge is one who presides over the court when the court is in session. Thus, in a very broad sense with respect to a trial, the word "court" includes not only the judge, but also the jury, and all other persons involved in the administration of justice on behalf of the state. In the context of R.C. 2744.05(C)(2)(c), the word "court" has the meaning of either "judge" or "jury" depending upon which is the trier of fact in a given case. See cases digested in 57 Ohio Jurisprudence 2d (1963) 214, Words and Phrases, under the word "court."

Sometimes, the word "court" is clearly used to indicate the judge, such as when the words "court trial" and "jury trial" are utilized in juxtaposition. However, it does not follow that every reference to "court" in the context of a trial necessarily refers to the judge rather than the jury, since it is possible that it may mean either, depending upon the context.

Accordingly, even though the word "court" in some contexts may refer to the judge, rather than the jury, where, as here, it refers to the making of part of the findings of fact bearing upon a particular issue, which is expressly designated to be determined by the jury when there is a jury trial, the word "court" must be construed to be either the jury or the judge, depending upon whether there is a nonjury trial or a jury trial. See R.C. 2744.04(B). Necessarily, the actual loss of the person who is awarded the damages is a part of the damage determination. There is no apparent reason for having the judge rather than the jury, in a jury trial, determine one aspect of the actual loss of the person who is awarded the damages, while the jury determines all other parts of the damages. Moreover, there is no indication in the statute that the legislature intended to disrupt a jury trial by having the judge, rather than the jury, make one factual determination, without which the trier of fact, the jury, would be unable to perform its function of determining damages. Accordingly, we do not construe R.C. 2744.05(C)(2)(c) to require that the word "court" means only the judge.

So construing the statute avoids the constitutional conflict and makes it unnecessary to resolve the issue finally in this case. If the statute were to be construed as plaintiffs have argued, it would be unconstitutional insofar as it has retroactive application. On the other hand, if it were to be construed as set forth above, there is no constitutional problem, but instead, plaintiffs are entitled to a jury trial upon all parts of the damages issue. Accordingly, plaintiffs' second assignment of error is sustained only to the extent it is consistent with the above reasoning.

Finally, plaintiffs argue that the trial court committed two evidentiary errors. First, plaintiffs contend it was error for the common pleas court to allow deposition testimony from a witness regarding his settlement with

defendant Gee's insurer. Second, it is plaintiffs' position that the trial court improperly allowed defendants to question plaintiff Ronald Hubner about visitation problems he was having with plaintiff Deborah Hubner, his ex-wife.

We find no merit to plaintiffs' contention that the court erred in admitting deposition testimony elicited by defendants on cross-examination of plaintiffs' witness regarding his settlement with the Gees' insurance company. Although Evid. R. 411 and 408 prohibit the introduction of evidence regarding liability insurance or settlement attempts for the purpose of establishing liability, such evidence is clearly admissible to prove bias or prejudice. Evid. R. 408 and 411; *Beck* v. *Cianchetti* (1982), 1 Ohio St. 3d 231, 1 OBR 253, 439 N.E.2d 417. As such, any prejudice which may ensue from this line of questioning can generally be cured via limiting instructions upon proper request. Evid. R. 105. In any event, since plaintiffs failed to object at trial to the introduction of the deposition testimony — in fact, plaintiffs introduced the deposition at trial — their argument in this regard is simply spurious.

As to plaintiffs' second argument regarding the propriety of allowing defendants to question plaintiff Ronald Hubner, over objection, about visitation problems he was having in seeing Nicky, we agree that it was error for the trial court to allow this testimony. Clearly, the issue before the trial court was the Hubners' claims for loss of services and loss of society of Nicky. Such claims are premised on the loss to the parents caused by the injuries to the child. In order to assess this loss, evidence regarding the relationship of the parents to the child, including the time and support provided, generally should be presented to the jury. Here, however, defendants introduced evidence which went not to the relationship of Ronald Hubner to his son, but to the relationship he had with Deborah. The evidence merely indicated that Ronald Hubner was being denied visitation by Deborah. As such it had no bearing on the relationship Ronald had established with Nicky.[2]

Based on the foregoing, plaintiffs' third assignment of error is sustained in part and overruled in part. Plaintiffs' first and second assignments of error are sustained, and the judgment of the common pleas court is reversed. The cause is remanded to that court for further proceedings consistent with this decision.

*Judgment reversed*
*and cause remanded.*

WHITESIDE, P.J., and McCORMAC, J., concur.

---

[2] If anything, defendants' evidence suggests that Ronald Hubner was attempting to assert his interest in maintaining his relationship with his son. Nevertheless, the evidence was relevant only to the divorce action between the parents.